517 F.2d 1267
 86 L.R.R.M. (BNA) 3208, 170 U.S.App.D.C. 437,
74 Lab.Cas. P 10,235
 Stephen PETE, on behalf of himself and all others similarly
situated, Appellees, Louis Belton et al.,
Plaintiff/Intervenor Appellees,
v.
UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND
OF 1950 et al., Appellants.
 No. 73-1270.
 United States Court of Appeals, District of Columbia Circuit.
 Argued April 23, 1974.
Decided Aug. 5, 1974.
 
 Fred M. Vinson, Jr., Washington, D.C., with whom Michael P. Bentzen, Joseph A. Rafferty, Jr., Joseph T. McFadden, Washington, D.C., and M.E. Boiarsky, Charleston, W.Va., were on the brief, for appellants.
 Julian H. Singman, Washington, D.C., with whom Martin Shulman, Washington, D.C., was on the brief, for plaintiff/intervenor-appellees.
 Louis Rabil, Washington, D.C., with whom Manfred J. Schmidt and Edward J. Gorman, Jr., Washington, D.C., were on the brief, for appellees Pete, et al.
 Before EDWARDS,* United States Circuit Judge for the Sixth Circuit, and TAMM and WILKEY, Circuit Judges.
 WILKEY, Circuit Judge:
 
 
 1
 The material facts and controlling legal principles in this class action suit are essentially the same as those in Kiser v. Huge, 170 U.S.App.D.C. ---, 517 F.2d 1237, No. 73-1393, decided this day. Therefore, this opinion will be limited to a discussion of only those facts and issues that have not been fully treated in the Kiser opinion.
 
 
 2
 The class in this cases consists of all former mine workers who retired prior to 1 February 1965 and who were denied pension benefits solely on the basis of their failure to meet signatory last employment requirement of Trustees' Resolution No. 56, as amended by Resolution No. 57.[1] Specifically, this requirement provided that in order to qualify for a pension, a miner must have "[p]ermanently retired from and ceased work in the Bituminous Coal Industry after May 28, 1946, following regular employment in a classified job ... as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950...." The plaintiffs-appellees filed their complaint in District Court on 15 July 1969, well before this court decided in Roark v. Boyle[2] (Roark II) that a bare signatory last employment requirement is invalid.
 
 I. History of the Litigation
 
 3
 On 9 January 1973 the District Court, 352 F.Supp. 1294, having found that there were no material facts genuinely in dispute, entered summary judgment for the plaintiffs. The court declared the signatory last employment requirement invalid as applied to plaintiffs and enjoined the Fund "from denying to the members of the class of plaintiffs herein present and future pension benefits." The court further ordered that the plaintiffs be paid back pension benefits retroactive to 15 July 1969, the date their complaint was filed.
 
 
 4
 On 25 May 1973 this court ordered that "members of the class of plaintiffs-appellees who have worked a minimum of five (5) years for a signatory operator since May 28, 1946, shall forthwith be placed by [the Fund] upon the pension rolls as of January 1, 1973 ... [and] shall be paid by [the Fund] back pension benefits retroactive where appropriate to August 14, 1970, the decision date of Roark v. Boyle ..." We styled this order as an "intermediate position ... pending appeal." We further remanded the record to the District Court "to facilitate an expeditious final decision on the matter of full pension retroactively still pending before it and on the issue of what period of prior signatory service is a prerequisite to pension eligibility."
 
 
 5
 On remand the District Court issued a Memorandum and Order dated 24 January 1974 providing: (1) that the class plaintiffs are entitled to back pension benefits "retroactive to the first day of the month following the date that their respective applications for pensions were denied"; (2) that no interest will be paid on plaintiffs' accrued pensions; and (3) "that defendants shall pay to class action plaintiffs' counsel the sum of $240,921.00, as well as $1,321.09 for expenses incurred and disbursed by counsel up to and including July 19, 1973, and all proper expenses incurred and disbursed thereafter."[3] The court also held that it would be inappropriate to impose on class members a five-year total signatory service requirement as a prerequisite to pension eligibility.[4]
 
 
 6
 On the basis of our holding in Kiser v. Huge, 170 U.S.App.D.C. ---, 517 F.2d 1237, No. 73-1393, we affirm the District Court insofar as it ordered that members of the plaintiff class be placed on the pension rolls and be paid retroactive pension benefits. We reverse the District Court's determination that plaintiffs-appellees are not entitled to interest on their accrued pensions. We remand the record for further action in accordance with this opinion and that in Kiser with respect to (1) the question of how much total signatory service should be required to qualify for the relief granted herein; (2) interest; and (3) attorneys' fees.
 
 
 7
 II. Invalidity of the Signatory Last Employment Requirement as Applied to Plaintiffs-Appellees
 
 
 8
 The governing resolution when members of the plaintiff class filed their pension applications was No. 56, as amended by No. 57. This resolution contained a bare signatory last employment requirement, which we found arbitrary and capricious in Roark II. Under our decision today in Kiser v. Huge, Resolution No. 83, which attempted to supply a "validating context" for the signatory last employment requirement, cannot be given retroactive effect to deny the pension applications of plaintiffs-appellees. Since members of the plaintiff class met all criteria for eligibility in effect when they applied except the invalid signatory last employment requirement of Resolution No. 56, they then acquired rights to pension benefits that could not be divested by subsequent alterations in eligibility requirements.
 
 
 9
 We affirm the District Court's holding that members of the plaintiff class are now entitled to pensions.
 
 III. Retroactive Relief
 
 10
 The District Court ordered that each member of the plaintiff class be paid accrued pension benefits retroactive to the first day of the month following the date on which his pension application was denied. On the basis of the discussion in the corresponding section (Part IV) of our opinion in Kiser v. Huge, we affirm this aspect of the District Court's decision.
 
 IV. Total Signatory Service
 
 11
 In our order of 25 May 1973 we remanded the record in this case to the District Court with instructions to reach a "final decision ... on the issue of what period of prior signatory service is a prerequisite to pension eligibility." In so doing, we recognized that in Roark II we had stated, "[T]he Taft-Hartley Act [section 302(c)(5)[5] ] requires that each pensioner have some history of contributory employment."[6]
 
 
 12
 In its Memorandum of 24 January 1974 the District Court held that five years of signatory service should not be required.[7] While we agree that it would be inappropriate to apply a five-year signatory service requirement to the members of the plaintiff class,[8] we must conclude that the District Court has not fully implemented the instruction on remand that it specify some period of signatory service as a prerequisite to pension eligibility. Therefore, we again remand the record to the District Court for an expeditious exercise of its equitable discretion on this issue in light of the discussion herein and in Kiser v. Huge.[9]
 
 
 13
 We should note as a guide to the District Court that our affirmance of the court's decision in Kiser to impose a one-year signatory service requirement does not necessarily compel a similar result in the instant case. The rationale of the decision in Kiser was, in part, that the resolution in effect at the time members of the Kiser class applied for pensions contained the bare requirement that an applicant have worked his last year in the coal industry for a signatory employer; thus, the total amount of signatory service then required was one year. In the instant case, Resolution No. 56, which governed the applications of plaintiff class members, required only that an applicant have worked some amount of time for a signatory operator at the end of his career. Hence, the solution in this case that would parallel the result in Kiser would be to require each member of the plaintiff class to demonstrate that he has some signatory service to his credit. We emphasize, however, that this solution is not inevitable. The final solution lies within the equitable discretion of the District Court.
 
 V. Interest
 
 14
 For the reasons stated in Part VI of our opinion in Kiser v. Huge, we reverse the District Court's decision not to grant plaintiffs-appellees interest on their accrued pensions. We remand to the District Court with instructions to award members of the plaintiff class interest at six percent per annum on accrued pension payments from the dates on which those payments fell due through the date on which the judgment in this case is satisfied.
 
 VI. Attorneys' Fees
 
 15
 In its Memorandum and Order of 24 January 1974, the District Court taxed against defendants-appellants fees for the plaintiff class attorneys totaling $240,921.00. This figure was reached by multiplying the total number of hours logged by an hourly rate of $50.00 and adding as a bonus five percent of the estimated class recovery.[10]
 
 
 16
 We must accord the District Court considerable latitude in determining the proper compensation for attorneys.[11] Hence it would be inappropriate to upset the District Court's decision with respect to the number of hours to be credited to class counsel and the hourly rate of compensation since we find those decisions reasonable. However, we have concluded that the District Court improperly exercised a discretion in awarding class counsel a percentage of the total class recovery. Like Kiser v. Huge, the instant case was decided at the summary judgment stage without extensive pretrial discovery. The legal issues are neither novel nor complex. While the efforts of class counsel conferred a significant benefit on plaintiffs-appellees, this case has not vindicated any important public policy nor has it advanced any legal principle of pervasive applicability. Finally, the risk or contingency factor for class counsel in undertaking this litigation was not substantial. The plaintiff class representatives filed their complaint after Roark v. Lewis[12] (Roark I) had declared the signatory last employment requirement presumptively invalid. Roark II, on which we have relief as controlling precedent, had been decided for over a year when by order of 30 September 1971 this case was certified as a valid class action.
 
 
 17
 We thus consider five percent of the total class recovery to be an excessive reward for class counsel's prosecution of this litigation, and remand the record to the District Court for recalculation of the premium. We think an appropriate basis for this determination is that employed by the District Court in Kiser v. Miller,[13] in which class counsel was rewarded with a percentage of the total hourly compensation.
 
 
 18
 On the basis of our discussion in Part VII of Kiser v. Huge, we affirm the District Court's taxation of plaintiffs' attorneys' fees against defendants-appellants.
 
 VII. Conclusion
 
 19
 We affirm the District Court's disposition of all substantive issues except the question of total signatory service, which we remand for prompt resolution. Pending this determination, the District Court should proceed to order full retroactive relief for all retired miners who have accumulated so much signatory service that they will obviously qualify for relief.
 
 
 20
 We reverse the District Court's decision not to award interest and remand for action in accordance with Part V supra. Finally, we remand the issue of attorneys' fees for recalculation of the premium for class counsel in accordance with Part VI supra.
 
 
 21
 Affirmed in part; reversed and remanded in part.
 
 APPENDIX
 RESOLUTION NO. 56
 
 22
 FIFTY-SEVENTH MEETING OF THE BOARD OF TRUSTEES OF THE UNITED
 
 
 23
 MINE WORKERS OF AMERICA WELFARE AND RETIREMENT
 
 FUND OF 1950, APRIL 11, 1960
 
 24
 * * * * * *
 
 I. Eligibility
 
 25
 An applicant shall be eligible for a pension if he has:
 
 
 26
 A. Attained the age of sixty (60) years or over at the time of his application for pension.
 
 
 27
 B. Completed twenty (20) years' service in the Coal Industry in the United States, its possessions or territories, or the Dominion of Canada within the thirty (30) years' period immediately preceding the date his application for pension is received at the office of the Fund; a year of service being one for which the applicant has:
 
 
 28
 1. Worked as an employee in a job classified in any National Coal Wage Agreement for an employer in the Coal Industry, for a minimum of one-half the average number of days that the mines in the county or state in which he worked were active, whichever is the lesser; provided, that where less than one-half the average number of days were worked, credit for service shall be given to the nearest one-fourth year, provided further that he was connected with, the operation or management of a coal mine or coal operation, and was not the recipient of income, revenue, emolument, proceeds, gift or return from the operation or management or a coal mine or coal operation either directly or indirectly.
 
 
 29
 2. Received Workmen's Compensation payments pursuant to an award as result of an occupational disease or injury sustained in the mine while employed in a classified job, described in subsection 1 hereof, provided he did not work in jobs outside the coal industry during compensable period, subject to the following:
 
 
 30
 a. A maximum of four years from date of injury is credited:
 
 
 31
 (1) During this period for which payments were made on a basis other than permanent and total disability.(2) In the event of an award predicated upon permanent and total disability, provided that the applicant returned to regular employment in the coal industry.
 
 
 32
 3. Rendered service as an employee of the United Mine Workers of America in the Coal Industry and is not covered by the pension or retirement plan of the United Mine Workers of America.
 
 
 33
 4. Served in the military service of the United States in any war or national emergency, immediately following employment in a classified job in the Coal Industry.
 
 
 34
 C. Retired from or ceased work in the Bituminous Coal Industry after May 28, 1946, following regular employment in a classified job, described in Paragraph B, 1, hereof, as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950, as Amended, and having been regularly employed in a classified job in the Coal Industry immediately preceding May 29, 1946; providing that, if he had retired from or ceased working in a classified job in the Bituminous Coal Industry prior to May 29, 1946, he shall be eligible for a pension only upon the completion of twenty (20) years' service in the Bituminous Coal Industry subsequent to May 28, 1946, and meets the other requirements of eligibility as contained in Paragraphs A and B and their subsections.
 
 RESOLUTION NO. 57
 
 35
 FIFTY-NINTH MEETING OF THE BOARD OF TRUSTEES OF THE UNITED
 
 
 36
 MINE WORKERS OF AMERICA WELFARE AND RETIREMENT
 
 FUND OF 1950, SEPTEMBER 27, 1960
 
 37
 BE IT ENACTED, that Paragraphs I C and III B.2 of Resolution No. 56 be and they are hereby amended to read as follows:
 
 I. Eligibility
 
 38
 C. Permanently retired from and ceased work in the Bituminous Coal Industry after May 28, 1946, following regular employment in a classified job, described in Paragraph B, 1, hereof, as an employee of an operator signatory of the National Bituminous Coal Wage Agreement of 1950, as Amended, and having been regularly employed in a classified job in the Coal Industry immediately preceding May 29, 1946; providing that, if he had retired from or ceased working in a classified job in the Bituminous Coal Industry prior to May 28, 1946, he shall be eligible for a pension only upon the completion of twenty (20) years' service in the Bituminous Coal Industry subsequent to May 28, 1946, and meets the other requirements of eligibility as contained in Paragraphs A and B and their subsections.
 
 
 39
 * * * * * *
 
 
 40
 EDWARDS,* Circuit Judge (dissenting on one issue):
 
 
 41
 For the reasons set forth in my dissenting opinion in Kiser, et al. v. Huge, et al. and United Mine Workers of America Welfare & Retirement Fund of 1950, 170 U.S.App.D.C. ---, 517 F.2d 1237 (No. 73-1393, Aug. 5, 1974). I dissent from that portion of the remand which would instruct or allow the District Judge to order pensions for any claimant with less than five years of signatory service.
 
 
 42
 On all other issues I join the opinion of the court.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 291(a)
 
 
 [1]
 Relevant provisions of both resolutions are set out in the Appendix accompanying this opinion. For the other resolutions involved in this litigation, see the Appendix to Kiser v. Huge, 170 U.S.App.D.C. ---, 517 F.2d 1237, No. 73-1393
 By order of 30 September 1971, the District Court certified this case as a valid class action under Fed.R.Civ.P. 23. The court further ordered that the Fund supply plaintiffs' counsel with "a list of the names and addresses of all alleged members of plaintiff's class" and that notice "be given by mail by plaintiffs' counsel to all alleged members of plaintiffs' class whose addresses are known and by publishing twice a week for two successive weeks in the Pittsburgh Post-Gazette and in the Washington Post...." These provisions for notice clearly meet the requirements of Fed.R.Civ.P. 23(c)(2), as most recently interpreted by the Supreme Court in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).
 
 
 [2]
 141 U.S.App.D.C. 390, 439 F.2d 497 (1970)
 
 
 [3]
 Supp.Joint App. at 61
 
 
 [4]
 Id. at 53
 
 
 [5]
 29 U.S.C. Sec. 186(c)(5) (1970)
 
 
 [6]
 Roark v. Boyle, 141 U.S.App.D.C. 390, 394, 439 F.2d 497, 501 (1970)
 
 
 [7]
 Supp.Joint App. at 53
 
 
 [8]
 See the discussion in Part V of Kiser v. Huge
 The inequity that a five-year signatory service requirement would create in the context of this case is even greater than in Kiser, since in order to qualify for a pension under Resolution No. 56, a miner needed to establish only that he had worked some amount of time for a signatory employer immediately before his retirement from the coal industry. Hypothetically, then, there is an X who retired before 1 February 1965 and applied for pension on 1 January 1966. X had worked just two weeks for a signatory employer during his career in the coal industry, but those two weeks had been his last in the industry. Assuming X met all the other eligibility criteria of Resolution No. 56, his pension application was granted and he has been paid benefits by the Fund to this day. On the other hand, Y is a member of the plaintiff class who retired before 1 February 1965 and applied for a pension at the same time as X. Y had accumulated four years and eleven months of signatory service but retired from a job with a non-signatory operator. The Trustees denied Y's pension application under the signatory last employment requirement of Resolution No. 56. Y would continue to be denied a pension if we or the District Court imposed a five-year total signatory service requirement, while X, with just two weeks of such service, would continue to receive a pension. As we pointed out in Kiser, this is the sort of inequity that Roark II sought to preclude.
 
 
 [9]
 The District Court's decision will affect the 15 putative class members who have no signatory service to their credit and may affect some of the 16 who have some signatory service but less than five years
 
 
 [10]
 The estimate was that of actuary Ethel Censor Rubin, who calculated that a total of $3,151,435.00 in pension payments had been denied plaintiff class members through 31 December 1972. Letter from Ethel Censor Rubin, 9 August 1973, Supp.Joint App. at 47
 
 
 [11]
 See, e.g., Green v. Transitron Electronic Corp., 326 F.2d 492, 496 (1st Cir.1964); 7A C. Wright & A. Miller, Federal Practice and Procedure 289 & n. 51 (1972) and cases cited therein
 
 
 [12]
 130 U.S.App.D.C. 360, 401 F.2d 425 (1968)
 
 
 [13]
 364 F.Supp. 1311 (D.D.C.1973)
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 291(a)